25-1381 May it please the court, Robert Lichty for Carmen Tafoya. The issue before you is how do we determine when a case like this which concerns evidence of subordinate bias goes to a jury or the other way of looking at it is when is summary judgment in a case like this proper. There is no 10th Circuit case which directly addresses how evidence of subordinate bias works into the McDonnell-Douglas scheme. In fact, there's not even in the two 6th Circuit cases which have adopted the subordinate bias into McDonnell-Douglas, they don't really discuss where it belongs in the McDonnell-Douglas scheme. Is subordinate bias evidence of an inference of discrimination? That's the fourth step in the prima facie test. If so, this is a pretty easy case to evaluate because you can see that seven different facts, some of the facts involve subordinate bias and some of the facts involve just regular circumstantial evidence that you normally see in a McDonnell-Douglas prima facie test. But if you look at all seven of those facts either independently or together, it easily raises an inference of unlawful discrimination. Now that we raised in our opening brief on page 35. The only problem that I have with this, and the district court did not get to the pretext stage, but the problem that I have with subordinate bias being seen as evidence of the fourth step of the McDonnell-Douglas prima facie test, is that when you get to the third step, that is the pretext case, how do you how do you describe pretext when the super decision-maker is being led around by the subordinates? So the decision-maker... You're looking at the explanation given by the subordinate. Essentially you're just proving that someone who wasn't the final decision-maker was biased in making the recommendation to the final decision-maker and you have to show that the final decision-maker just acted as a cat's paw and didn't get involved. Right. I just don't know how that's... Yeah, I don't know how that's phrased because the traditional way of looking at pretext is the decision-maker lied about the reason, so the fact that they're lying means that there's another reason that they're covering up. But that easily translates. Okay, as long as there's no problem with you, Judge Hartz. Maybe I'll change my mind. Well, I know what your theory, what your preference is when it comes to McDonnell-Douglas, so perhaps... I don't think this is one where you can actually not follow McDonnell-Douglas. I think it's probably best... Yes, I think it's probably best if we follow... if we have fidelity to McDonnell-Douglas, but we have to apply all the facts. So get to where there's evidence of bias and discrimination. Well, first of all, what type of fact is a fact that raises an inference of discrimination? I suggest that it makes the judge pause and say, well, that's not right. There's something else going on here. There are seven such facts in this case, I propose, all referenced in my short eight-page response brief. And by the way, the opening brief in the court below by the city was only 12 pages, so it's relatively short briefings in the court below. But there are seven facts. Number one, the subordinates told Traynor, the decision-maker, the city manager, that plaintiff, Ms. Tafoya, asked that her husband's renter's deposit be waived. She denied that. The investigation showed that there was no support for that. So that was a false fact given to the decision-maker. The subordinates also told Traynor that Ms. Tafoya looked up the renter's confidential, as opposed to non-confidential, information. She said the only thing I looked up was whether or not he had been a prior city customer, which the city manager himself said, that's not confidential, you can do that, that's not a problem. But those... She asked somebody else to get the confidential information, isn't that correct? No, no, she just wanted to find out if he was a prior city customer. That's all she asked for. She got more. She asked for that, and she ended up getting a lot more information back that she didn't ask for. She never asked, you know, is he current on this bill? All she wanted to know is, was he a prior city customer? Because if so, he could then possibly qualify as not having to pay the deposit if he also had, you know, good payment history. Whether she asked for it or not, and I think that's a question of fact, but whether she asked for it or not, she certainly then relayed that, or attempted to relay that information to her son. To her son, that's right. Including the confidential information that was given to her. Here's the strange thing in the record. Oddly enough, there's nothing in the record saying that she actually gave that to her son or to her husband. She wanted to. She attempted to. She wanted to, but it was not given. Because she sent it back to the person she'd received it from by accident. But here's the thing. Those two facts, they're both incorrect facts, but those were the facts upon which the city manager, Mr. Traynor, said, I'm terminating you for these two reasons. But the district court judge never even considered those two reasons. But implicit in your argument is that the reason these two false statements were made to the supervisor was because of age bias by the people making those statements.  And what do you have to show that? Okay, well, let's go on a little bit further on that. What's she doing on the day when this happens? She's at home on leave for her, as she says, fainting spells. She's, that's evidence of she's old and wearing out. Then Mr. Robinson treated her entirely differently than he treated the 36-year-old woman, Dana Daniel, who gave her the information. So the fact that she got the information. Well, I thought the difference was that Daniels didn't give the information to someone outside the department. And that was the difference. Oh, that was a difference that was made in the briefing. We disputed that that was a difference at all. And I cite to this case, this court to. What was your dispute with that? What did you dispute about that? Are you disputing that Daniels did? Are you saying Daniels gave it to someone outside the? No, no, no, no, no, no. We're just saying that by giving out the information, Robinson himself said whoever gave that information in that text message, that would be a violation. That's what he said in his deposition. So that's in the record. So just giving out that information. In other words, he owes, he's back due on payments to the city. That's supposedly confidential information, which should not be given out. Now, whether that's actually confidential information, I don't know. But that's that's what the city argued. But then if you say, well, that's confidential information, then the person who gave it should also at least have been investigated. Right. So that's evidence that it wasn't confidential information. There's a lot of factual disputes here. There's really no factual dispute, though, that the district court relied on an admission that you made during discovery, specifically relied on the admission that Robinson, the supervisor, was not aware of any other employees who breached the confidentiality and other policies, like Plaintiff had. Oh, like Plaintiff has, yes. That was the admission. Yes, like Plaintiff had, yes. Well, that's the admission. But you're now. But. Let me finish. I am now trying. You're now trying, at least in your briefing, to say, well, yeah, we admitted that. And yeah, the district court relied on it. But we didn't mean what we said. We really meant. No, no. We got a whole discussion about what you really meant. No, no, no. We did mean what we say, that she didn't. That's not what you said in your briefing. We admitted that Ms. Daniel did not give it to anyone else the way that my client did. That's what we admitted. We did not admit that Ms. Daniel did not provide confidential information to her. We never admitted that. You admitted that. The issue isn't what Daniels did or didn't do. You admitted that Robinson, who you say is the biased decision maker and rely on for the cat's paw theory, you said Robinson, you admitted, was not aware of any of the employees who breached the confidentiality and other policies like plaintiff had. She wasn't aware of that. So how could you be using that now? I'm just saying that admission that you're now trying to back off of is a real problem. And the district court relied on it. And there's nothing you can do to change that admission. But we also said to the district court that he knew that she had provided. Robinson knew that Daniel had provided the information to Tafoya. We said that. Did she do it the same way that Ms. Tafoya did? No, not exactly the same way. But we did make a point that she provided the same information to Ms. Tafoya that Ms. Tafoya was investigated for and ultimately terminated for. So we did admit that. One of the problems is the facts as they were stated by a defendant were stated with such qualifications that we said, yeah, okay, we can admit that. Was there anything else besides this? But we made it clear to the court that Robinson treated the two differently. I get that. We made that very clear. Was there anything else? Judge Hartz asked you what was the evidence of age bias on the part of Robinson, I think it was, supervisor. And you said, well, she's old and she's wearing out. Well, she was at home. Well, she was at home for her FMLA leave. Right. And is there anything, anything at all in the record to suggest that this, through all the time that he'd been her supervisor, that he'd done or said done anything else? Well, now we get down to the evidence. The only thing I understood that you gave Judge Hartz in response was this point about the potential comparator who wasn't.  Yeah. And we just discussed that. Was there anything else? Yes. Okay. We provided the affidavit or the declaration of Deborah Miller. Now, that was stricken by the court. And that was stricken. Yes. So let's talk about that. There's three pieces of evidence there. What in that, if, assuming it hadn't been, we agree that it was an abuse of discretion to strike it, what in that affidavit would have indicated that with respect to Ms. Tafoya, Mr. Robinson acted in a discriminatory manner? Well, Mr. Robinson was, he was involved in the, he was the supervisor of Ms. Miller. He knew that if he's going to terminate. What information did she have in the affidavit that was directed toward Mr. Robinson and his supervision of Ms. Tafoya? She should have been. Because that's what matters. Yeah, that Ms. Miller should have been included in the decision to terminate Ms. Tafoya. She was not. She was not told about it until. That doesn't show age discrimination on the part of Mr. Robinson. And then Ms. Miller said she would have opposed it. Okay. And Ms. Miller. Also doesn't show age discrimination. Yeah, she quit 30 days later saying that she saw age discrimination in the department and that's why she quit, because the younger employees were working the older employees. Okay. And did she say anything specific about Mr. Robinson, his decision to terminate Ms. Tafoya, or any past actions on the part of Mr. Robinson toward Ms. Tafoya? Well, actually, it wasn't Mr. Robinson's decision to terminate. That was Mr. Trainor's decision, the decision maker. Mr. Robinson is simply feeding bad information to the city manager. He's the cat's paw. Yes. Yeah, so that's why I'm asking about Mr. Robinson. Yeah, he's the bias aborter. Because that's your theory. So, yeah, that's why I'm asking. I'm trying to find out if we agree with you that that was not an abuse, that it was an abuse of discretion to strike the affidavit. Right. What meaning that has to answer that question? He also told Ms. Miller that I don't want an older person in that position. So that's some evidence. In what position? It was a supervisory position. Not her, not Ms. Tafoya's position. Yeah, no, no. But she said, and Ms. Tafoya did not apply for that position either. So it was not directly referenced to Ms. Tafoya, but it is a reference to him not wanting older people in positions of supervision. Okay. Thank you. Anything else? The only thing would be. Could I just do one follow-up on that conversation you were just having with Judge Morris? How could any reference in Ms. Miller's declaration. Why would it matter when the assistant city attorney conducted an independent investigation that was presented to Mr. Blankenship and then ultimately led to the decision here? Why doesn't that cut off your cat's paw argument? I'm sorry. I don't understand the question. Well, back up. As I understand it, the assistant city attorney investigated this matter. Right, right. And made a report. Right. Yeah, Ms. Parker. All right. So where's the cat's paw then? Where is it? Oh, oh, oh. Didn't she do an independent investigation? Yeah. And then they made the decision. And then when Robinson and the two other supervisors walked the city manager through what Ms. Parker had done, walked her through an investigation, they told Mr. Traynor she asked to have the renter's deposit waived. Well, the investigation said exactly the opposite, that there was no support that she asked to have the renter's deposit waived. So when they walk him through, they selectively walk him through. So, no, Parker was, she was fine. We don't have a complaint with Parker. It's how Parker's, it was 19 pages, how that was conveyed to the city manager, because he admits he did not go through Parker's investigation by himself. He was walked through it by them. So that is the evidence that the cat's paw is still very much alive. And I see my time's done, and thank you. Thank you, counsel. Good morning. Good morning. Morning, Nathan Kloster on behalf of the city of Fountain. Simply put, the district court properly granted the motion for summary judgment and the motion to strike. And for either the reasons set forth by the court or any of the reasons argued before, the district court, we contend that the judge made the correct decision. And before I get into the particulars, I do want to address a comment that I believe I heard from Mr. Lichty. I believe he mentioned in response to Judge Mathison, your last question, that Mr. Robinson walked the city manager through the decision. And if I, if I, if that, what I heard is what indeed was stated, that is not accurate. Mr. Robinson was not involved at all in the decision to terminate. Mr. Robinson relayed the information he learned on the day of the events, and what he felt were potential violations of policy. That then went to HR, who brought in the assistant city attorney, Ms. Parker, to conduct an independent investigation. That investigation reached substantiated findings as to a number, but not all of the policy violations investigated. Then that report, along with a draft corrective action form, was brought to a meeting with the city manager, in which the department director, Mr. Blankenship, the HR director, Ms. Brisbanehan, and the city attorney, Mr. Johnson, walked through with the city manager all of the findings and basis for them in the investigative report. Mr. Robinson was not a part of that meeting. Mr. Robinson's involvement ended with him simply being one of multiple witnesses interviewed by Ms. Parker. I think that is very important to note. So you have, at an absolute minimum, an intervening, independent investigator, Ms. Parker, who Mr. Lichty just acknowledged they are not claiming any bias or improper motivation of, who in her own deposition testimony, according to the undisputed facts, What if Robinson gave Parker false information? That's the purpose of an independent investigation. The city attorney ferrets out from all of the witnesses, including using interview with Ms. Tafoya and her own admissions, which are part of the undisputed facts. Did Robinson have any relevant facts from his personal knowledge as opposed to having something reported to him? No, he was not involved in the conversations. All he did was act as a conduit from the information he heard from other employees and relay that to human resources so that it could be investigated. So if then Ms. Tafoya challenged some of the report by the assistant city attorney, she would have a chance to respond. And Robinson's involvement was not as a first-hand witness, so the assistant city attorney could then interview the people that Robinson had relied on. Exactly, and that's what she did. There was no opportunity for him to be the sole source of false information. Is that fair to say? That is absolutely correct, Your Honor. This is not a situation where the cat's paw would apply, such as Mr. Robinson hears X. He has no legitimate basis. He tells that to the city manager. The city manager says, OK, I'm terminating because you told me to terminate because of X. That's not what happened here. There is two independent intervening steps between what Mr. Robinson reports, the independent investigation by Ms. Parker, who by Ms. Tafoya's own deposition testimony, she had no disputes or issues with, and then the review by the city manager, the department director, Mr. Blankenship, the HR director, Ms. Brisbanehan, and the city attorney, Mr. Johnson, all of whom, again, the undisputed evidence is Ms. Tafoya had no disputes with, who then reviewed the independent investigation and made their own determinations. All of that without Mr. Robinson's involvement. And is Mr. Robinson the only one who is allegedly, I'll call him a puppeteer, was he the only one alleged to have had the bias? Yes. And does that only come through the Miller Declaration? Well, I don't think it comes through at all.  But the only potential fact that really even gets close to a age-related issue is in the Miller Declaration. The one sentence that she contends Mr. Robinson apparently said he didn't want to hire an older female who ended up getting hired, and for which Ms. Robinson, who is a supervisor, had a duty under policy to report if she thought age discrimination was occurring, never reported. Let me ask you, again, relating to Mr. Robinson, at least in the early steps of all this, he did report something to HR, correct? Yes. And I guess I'm going to go back to something that was discussed a few minutes ago, and that is his awareness of Ms. Daniels' conduct in all this. I thought I'd read somewhere, and you can correct me if I'm wrong, that Ms. Daniels had sent him a screenshot of her text exchange with Ms. Tafoya, asking her to search for the prospective tenant's information. Now, do I have that right? Yes. So there is a text exchange that was initiated by Ms. Tafoya, and Ms. Daniels responded very briefly, and then Ms. Tafoya sends to Ms. Daniels the financial information, which the briefing both before the district court and this court incorrectly characterizes Ms. Daniels sending the financial information, which the text in the testimony is clear it was Ms. Tafoya. But when Mr. Robinson became aware that there was a text exchange, he helped Ms. Daniels screenshot it, and then he provided it to the investigator so it could be one piece of information that the investigator had for purposes of the investigation. But when he went to HR in the first place, he reported Ms. Tafoya, but he didn't report Ms. Daniels. So there's no evidence he knew anything about the screenshot when he first raised the issue with HR. He learned during the investigation, because it's a follow-up email, that he learns of the text exchange, and he provides that. But that text exchange, if you read it, does not put a reasonable supervisor on notice that the employee has engaged in wrongdoing. Because what he did wasn't wrong, or because it doesn't show what he did? Because one point being made by plaintiffs is that, or by your side, is that what Ms. Daniels did did not conflict with city policy because she didn't give the information outside the department? Is that what you're saying? Or are you saying that it doesn't even show that? Both. Okay. So to start with, Ms. Tafoya texts Ms. Daniels, Dana, can you please call me? Then the testimony that is in the record from Ms. Tafoya is that Ms. Daniels calls her, she asks Ms. Daniels for information, and then Ms. Daniels says, I'm not comfortable discussing this with you, but I'll go talk to a different supervisor, Ms. Villain. And then the text from Ms. Daniels says, Hi, Carmen, I just spoke with Mary, and she stated that Sanchez needs to call and go through the new account process. That is the sole and only testimony that we have during this case prior to summary judgment. And then Ms. Tafoya ends up by sending the inadvertent text back to Ms. Daniels that she intended to send to her son. So that's what Mr. Robinson knew. That does not say that Ms. Daniels gave out inappropriate information, right? She's saying direct the renter to come to the city. How did she get that information that she sent to her son? Can't we make an inference there? No, because, in fact, it wouldn't make sense for it to be Ms. Daniels because the dollar amount that Ms. Tafoya used was not the dollar amount that was shown on the computer at the time of these events that day. It was an incorrect amount. So what more likely is the inference is that Mr. Sanchez, who the evidence indicated actually had called the city prior to Ms. Tafoya's involvement and learned the same information, which is why the only reason for Ms. Tafoya to reach out is for her personal rental business to verify the honesty, the creditworthiness, and whether she could get this guy a waiver or not. But the information is that the dollar amount more closely aligns to what would have been indicated to him in previous communications he had with the city, not what the computer system would have shown Ms. Daniel that day. So I don't think this text message reasonably put Mr. Robinson on any sort of notice that Ms. Daniels did anything wrong. And, in fact, Ms. Tafoya never said during the investigation that Ms. Daniels did anything wrong. She never said in her deposition that Ms. Daniels did anything wrong. In fact, she didn't say that Ms. Daniels provided her the financials. She said they had this brief discussion that's along the same lines as this text message. So what is the relevance of Robinson's not knowing that Daniels did anything wrong? Why do you present that to us? So both under the similarly situated of Step 1 and the cat's paw argument of Step 3, if you don't have knowledge of a comparator, you can't be engaging in discrimination. That's not true. You can discriminate against someone even though you don't know about somebody else doing the same thing. The relevance is, I think, he started this action against Ms. Tafoya based on this knowledge. When he eventually learned what Ms. Daniels did, he didn't do the same thing. He didn't try to sanction her in the same way. That's what would show bias by Mr. Robinson. The fact that he didn't know anyone else had engaged in the same misconduct when he started the investigation, we'll say, against Ms. Tafoya, that doesn't mean he couldn't have discriminated against Ms. Tafoya. The fact that he didn't do anything against Ms. Daniels is what shows that the reason he proceeded against Ms. Tafoya but didn't proceed against Ms. Daniels must have been age discrimination. I saw that argument in the brief, and I thought, what difference does it make whether he knew at the time that Ms. Daniels didn't know at the time that Ms. Daniels did anything wrong? Straighten me out. Because opposing counsel's theory is this different treatment of similarly situated individuals. So as I view this, the first step is, if you don't know there's a similarly situated individual, you can't be intentionally motivated by discrimination. No, no, no, no. It's just a matter of proving the discrimination. You don't have to know anything about anybody else to be discriminating against Ms. Tafoya because she's older. But you prove that by showing that ultimately, Mr. Robinson treated two people differently and the only material difference which is disputed was that Ms. Tafoya was older and Ms. Daniels wasn't. So the fact that there isn't a comparator doesn't mean there wasn't discrimination. It's just the presence of a comparator allows you to draw the inference of discrimination. And the comparator, you may not know about the comparator until two weeks later. Say Ms. Daniel had really been the evil person here. And Mr. Robinson didn't know it at the time he started the investigation against Ms. Tafoya. If a month later he learns that really Ms. Daniel was the culprit and doesn't do anything to her, then that would be evidence that the reason he went after Ms. Tafoya was age discrimination. But you don't need to know that there's a comparator to be biased. But that's not the circumstance we have here, Your Honor. I agree with that. I just got confused by the argument that he couldn't have, that Robinson could not have been discriminated against Ms. Tafoya because he didn't know that Daniel had done something similar. Let me, can I ask? I think you're saying he never did know. There was some suggestion that maybe he did know through this text exchange. But you're saying the text exchange, which is what he saw, never does establish that Daniel provided the, Ms. Daniel provided the extra information that Ms. Tafoya then uses in her text that's supposed to go to her son. That that could have come from elsewhere and there's no reason, there was no reason for Mr. Robinson. Correct. I presume that's the reason for your admission that, or I think it was an admission that was made that the district court relied on, that Robinson didn't know that there was anyone. Correct. In fact, the first time that we all learned that there's an allegation that Dana Daniel shared inappropriate information and, you know, would or would not be a comparator, which I disagree that those circumstances are similar, is when Ms. Tafoya issues a sham affidavit or declaration in response to summary judgment. At no point before then does she say Dana Daniel shared inappropriate confidential information with me. And that affidavit got? Allowed. Allowed? Okay. That one was not struck. That's where it came from. Despite our moving for it. And I know I'm out of time, so I would just simply note that whether you look at this at step one, under the similarly situated prong, or under step three at the pretext prong, there is no evidence of age discrimination and Ms. Tafoya did not meet her burden. As your honor mentioned, there is undisputed facts that were admitted that are dispositive of this case. And whether you strike Ms. Miller's declaration or not, it doesn't change those undisputed facts, which preclude this case moving forward under the law. Thank you. Council. Appreciate your time. Cases submitted. Counselor excused. Court will be in recess till nine.